UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH PILARSKI, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LINDA PILARKSI, | ) | |
| | ) | Case No.: |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **JURY TRIAL** |
| | ) | **DEMANDED** |
| CHIEF CHRISTOPHER HAMMANN, | ) | |
| in his individual capacity only, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' COMPLAINT, 42 U.S.C. 1983,
EXCESSIVE FORCE, UNREASONABLE SEIZURE,
RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS**

Plaintiffs Keith Pilarski and Linda Pilarski, by counsel W. Bevis Schock and Robert H.

Menees, state for their Complaint under 42 U.S.C. 1983 regarding Substantive Due Process,

Excessive Force, Unreasonable Seizure, and Retaliation for Exercise of First Amendment rights:

**INTRODUCTION**

1.      Keith and Linda Pilarski live in New Haven, Missouri.  At the relevant time Christopher

Hammann was the Police Chief.  In recent years New Haven has suffered citizen-

government rancor.  One morning Keith gave someone the finger.  Later that evening

Keith was walking his dog and up drove Hammann.  Hammann put Keith in a headlock,

had him tased, landed on top of him, and arrested him.  Hammann also pushed Linda to

the ground.  Each was injured.  Keith spent 24 hours in jail.  Through false statements

Hammann initiated criminal charges.  Plaintiffs prevailed in all their criminal cases.

Plaintiffs sue under 1983.

1

## PRELIMINARY ALLEGATIONS

### Parties

1.    Plaintiffs are Keith Pilarski, ("Keith"), age 64 at the time of the incident, and Linda
Pilarski, ("Linda"), age 61 at the time of the incident.  Keith and Linda have been married
for many years and have resided in New Haven for many years.  Their address is 1016
Miller Street, New Haven, MO, 63068.

2.    At all relevant times, Defendant Christopher Hammann ("Hammann") was the Chief of
the New Haven Police Department.

3.    Hammann testified in open court in Keith's criminal trial that he holds a Master's Degree
in Criminal Justice from Columbia College in Columbia, Missouri, and that he was in
charge of training and compliance in his police department.

4.    Plaintiffs sue Hammann in his individual capacity only.

### Jurisdiction and Venue

5.    Plaintiffs bring this civil rights action pursuant to 42 U.S.C. § 1983 and § 1988; and the
First and Fourth Amendments to the United States Constitution.

6.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 2201, with 42
U.S.C. §1983 and 42 U.S.C. 1988 being the statutes at issue.

7.    Venue is proper in this Court under 28 U.S.C. § 1391 because the relevant events
occurred in Franklin County, Missouri, which is within the Eastern Division of this
Court.

### Color of State Law

8.    At all relevant times, Hammann acted under color of state law.  Particularly, at all
relevant times, Hammann acted under color of the laws, statutes, ordinances, regulations,

2

policies, customs and usages of the State of Missouri.

**Jury Demand**

9.    Plaintiffs demand a jury trial on their claims for damages.

**FACTS**

10.   The Pilarskis have large picture windows on either side of their front door.

11.   After the 2020 election Keith and Linda put many political signs in their picture
      windows.

12.   Missouri statutes, Franklin County Ordinances, and City of New Haven Ordinances
      contain no prohibitions on such signs, and the First Amendment protects such signs.

13.   In recent years the City of New Haven has suffered rancorous relations between its local
      government and the citizenry.

14.   The disputes have related to the razing of a local museum, the costs of a proposed new
      City Hall and Police Station, trash pick up, and other issues.

15.   Some of Keith and Linda's signs have related to those issues.

16.   A local business, Pinckney Bend Bed & Breakfast LLC, and/or Artisan Spirits, LLC d/b/a
      Pinckney Bend Distillery, ("Pinckney Bend"), has been involved in the dispute.

17.   The Pilarskis have at all relevant times been on the opposite of these issues from
      Pinckney Bend and the local government.

18.   Pinckney Bend has at all relevant times been aligned with the local government.

19.   On inference, Hammann has at all times been aligned in these disputes with Pinckney
      Bend and the local government.

20.   At all relevant times the Pilarskis have engaged in citizen activism on these issues by
      talking to other citizens, and in one case being loosely associated with a group which

3

hired an attorney to oppose the City's sale of the local museum to Pinckney Bend at all, and for what the citizens group believed was an unreasonably low price.

21.    In late winter or early spring of 2022 Hammann came to the Pilarski residence and rang the doorbell.

22.    Keith opened the door.

23.    Hammann stated that he was there about the signs.

24.    One sign contained the word "Bullshit."

25.    Hammann requested that Keith take down that sign.

26.    Keith took down that sign.

27.    A few days later, on April 26, 2022, the City of New Haven, charged Keith with "Nuisance," in case number 180892249, listing as the ordinance number for the offense a Missouri State Highway Patrol Charge Code, ORD901.0-934B20215599 0.

28.    Highway Patrol Charge Codes are not part of City of New Haven Ordinances.

29.    Missouri Rule 37.33(9) requires that a Violation Notice "cite the chapter and section of the ordinance alleged to have been violated and the chapter and section that fixes the penalty or punishment."

30.    The Sixth Amendment guarantees a Defendant the right to know the nature and cause of the charges against him.

31.    "The jurisdiction of a municipal [division] is limited to hearing and determining violations of municipal ordinances."[1]

32.    Hammann initiated the nuisance ticket as an "Information" using Missouri's Form 37.A

---

[1] *Bright v. Mollenkamp*, 482 S.W.3d 467, 468–69 (Mo. Ct. App. 2016), citing *Frech v. City of Columbia,* 693 S.W.2d 813, 815 (Mo. banc 1985).

"Uniform Citation."

33.     The Information contained Hammann's signature.

34.     Before charging Keith with "nuisance" Hammann had the luxury of unhurried judgment

and repeated reflections.  In bringing the charge Hammann disregarded the risk of

bringing a charge for which there was no basis, and Hammann was aware of that risk.[2]

35.     The Nuisance Ordinance for the City of New Haven, Chapter 215, has nothing to do with

signs.

36.     The only conduct by Keith which conceivably could have been the source of the ticket

was the sign with the word "Bullshit."

37.     The only chapter of the City of New Haven Code conceivably relevant to that sign is the

Sign Ordinance.  The only conceivably relevant section of the Sign chapter is §

450.585.3, which prohibits:

> Signs or other advertising structures displaying any obscene, indecent or immoral
> matter or containing subject matter which the City of New Haven finds offensive
> to children or residents of the community.

38.     Any reasonable law enforcement chief, particularly a Chief with a Master's Degree in

Criminal Justice and in charge of training and compliance would recognize that this

Ordinance is unconstitutional under the First Amendment.

39.     It is not stated in the Ordinance who is the authorized representative of the City of New

Haven to make the determination of what is "offensive to children or residents of the

community."

40.     On May 19, 2022, at his first court date in the New Haven Municipal Court, and without

counsel, Keith pled guilty to the charged offense: "Nuisance."

---

[2] *Winslow v. Smith*, 696 F.3d 716, 734 (8th Cir. 2012).

41.    The court suspended imposition of sentence and put Defendant on six months' probation.

42.    In bringing the charge Hammann violated Keith's right to fair criminal proceedings, that is his right to substantive due process, for the charge was wholly without merit, and improperly charged.

43.    Keith retained counsel.

44.    Keith filed a motion to withdraw his guilty plea.

45.    On November 16, 2022, the Municipal Court granted the Motion.

46.    A few days later the docket sheet for the case was amended to show that the case had been "Dismissed by Prosec/Nolle Pros."

47.    The docket sheet for the case shows the entry "Dismissed by Prosec/Nolle Pros" as occurring on at May 19, 2022, six months before the nolle pros actually occurred.

48.    Plaintiffs are unaware of the reason or methodology of the backdating.

49.    At the end of August and or the beginning of September, a then Alderman of the City of New Haven had gone around to several local businesses, including Pinckney Bend, and asked the business personnel to make a report if they heard Keith curse, because "they" wanted to arrest him.

50.    On September 12, 2022, in the morning, on the way to the Post Office, Keith was driving his car at the rear of the Pinckney Bend property.

51.    Over the prior several months Keith and an employee of Pinckney Bend had had minor squabbles and words.

52.    Those squabbles and words involved Facebook posts and words of opprobrium, including curse words, on both sides.

53.    As he drove along, by coincidence, Keith saw that employee and another person outside

one of Pinckney Bend's buildings.

54.　As he drove by, and without stopping, Keith gave that employee the finger.

55.　The employee testified at deposition and trial that Keith also said, "Fuck you, Motherfucker."

56.　Keith denies making that statement.

57.　At the time the employee was approximately 35-50 feet away from Keith's car.

58.　Keith drove on.

59.　The employee further testified at deposition and trial that he did not speak to Hammann that day about the incident, but that he did speak to his boss on the subject.

60.　Hammann testified at deposition and trial that he did speak to the employee that day, and that the employee had complained about the conduct.

61.　Late that afternoon Keith was walking his small dog in a grassy area near the front of his residence.

62.　Hammann drove up the Pilarskis' street and stopped his car near the center of the pavement in front of the Pilarski residence.

63.　Hammann said to Keith "I have reports that you have been telling people to get fucked."[3]

64.　Keith said: "I only tell people that who deserve it."

65.　Hammann said: "In New Haven you are not protected by the First Amendment."

66.　Keith said: "What are you going to do, put me in jail?"

67.　Hammann said, "Yes I am."

68.　Keith told Hammann to "Fuck off."

_____

[3] All quotations in this Complaint are to be read as "words to the effect of", and not as exact quotes.

69.    At that time Keith presented no risk to the safety of Hammann.

70.    Hammann became red faced, exited his car and came aggressively toward Keith.

71.    Hammann had lost his temper.

72.    Hammann grabbed Keith and put him in a headlock.

73.    Keith froze.

74.    Keith continued to hold the dog's leash.

75.    Hammann did not give Keith any orders.

76.    Keith did not flee Hammann.

77.    Keith did not pull away from Hammann.

78.    Keith did not resist Hammann.

79.    Keith put his arm through the window of Hammann's patrol car to steady himself.

80.    Hammann kept shouting to "Stop resisting."

81.    Another officer drove up.

82.    Hammann told the other officer to tase Keith.

83.    The other officer responded, in an inquisitive and incredulous tone: "You want me to tase him?"

84.    Hammann shouted "Tase him."

85.    The other officer tased Keith.

86.    Keith fell to the ground.

87.    After he was on the ground the other officer, again at Hammann's directive, tased Keith a second time.

88.    Hammann put his body weight on top of Keith.

89.    Both officers were shouting orders at Keith, but he was unable to comply because

Hammann was on top of him.

90.  Early in the incident, Linda came outside.

91.  Linda approached where Hammann had Keith in the headlock.

92.  Linda asked Hammann what was going on and demanded that Hammann release Keith.

93.  Hammann stated that it was none of her business.

94.  Hammann did not release Keith.

95.  Linda began screaming at Hammann, stating allegations that were then circulating around town including that Hammann had sent nude pictures of himself to ladies of the New Haven community.

96.  Hammann looked toward Linda, and as he looked, he was shaking in anger.

97.  Linda's words had at that point made Hammann even more angry and agitated.

98.  Linda observed the second officer tase Keith.

99.  Hammann let go of Keith as Keith fell.

100.  Hammann came toward Linda with his back toward her.

101.  Linda screamed again.

102.  Hammann turned toward Linda and punched her in the chest.

103.  Linda fell backwards onto the ground.

104.  Hammann put himself on top of Keith.

105.  At this point the video starts.

106.  Linda got back up and continued to demand information about what was going on.

107.  Linda asked to take her dog.

108.  Hammann spoke to Linda about the dog in a relatively civil manner and let her take the dog.

109.   The officers cuffed Keith.

110.   The officers brought Keith to his feet and walked him approximately 100 yards away to a vacant parking lot.

111.   An ambulance came and removed the taser barbs.

112.   Hammann drove Keith to the Franklin County jail in Union.

113.   Keith remained locked up for 24 hours.

114.   On inference, the 24 hour hold was at Hammann's directive.

115.   At Keith's criminal trial Hammann admitted that if Keith had been polite to him Hammann would not have arrested him.

116.   The day after the incident Hammann asked the employee to whom Keith had given the finger to file a complaint.

117.   Hammann filed a police report and probable cause statement with the Franklin County Prosecuting Attorney.

118.   Those documents contained many fabricated statements.

119.   Among the fabricated statements were that:

   a.   Linda had crawled on Hammann's back and grabbed his duty belt and service revolver,

   b.   Keith appeared to be on an intoxicant,

   c.   Hammann was injured,

   d.   Keith and Linda had both assaulted him,

   e.   The employee had spoken to him directly that day.

120.   Hammann's state of mind in making these fabricated statements was "willful, knowing or with a reckless disregard for the truth.

121.    The Probable Cause Statement and police report for the charges against both Keith and Linda were the same in all material respects.

122.    On November 10, 2022, the Franklin County Prosecuting Attorney charged Keith on Information in case Number 22AB-CR02427 with the following three misdemeanors:

a.      Assault 4th on a police officer, with injuries.

b.      Resisting Arrest, and

c.      Peace Disturbance.

The Peace Disturbance charge was based on the finger incident earlier in the day.

123.    Any reasonable law enforcement chief, particularly one with a Master's Degree in Criminal Justice, would recognize that giving the finger from a moving car and stating the alleged words "Fuck you, motherfucker" is not Peace Disturbance under either of the identical state statutes against Peace Disturbance, RSMo. 574.010 and the City of New Haven Ordinance against Peace Disturbance, 210.670, because such words would not incite a reasonable person to an immediate violent response and the parties were not face to face at the time, both of which are elements of a Peace Disturbance violation.

124.    At the time he arrested Keith for the alleged Peace Disturbance Hammann did not know or even have any information about the distance between Keith and the employee at the time of the gesture and the alleged words.

125.    On that date the Franklin County Prosecuting Attorney also charged Linda on Information in case number 22AB-CR02419 with one misdemeanor:

a.      Resisting/Interfering with Arrest.

126.    Keith went to trial on his three charges.

127.    At trial Hammann gave fabricated testimony, in that he testified in a manner consistent

11

with his statements in his Probable Cause Statement and police report as stated above.

128.   At trial Hammann's state of mind in giving such testimony was, again, willful, knowing or with a reckless disregard for the truth.

129.   On each charge against Keith the jury returned verdicts of not guilty.

130.   Soon thereafter the Franklin County Prosecuting Attorney entered nolle prosequi on Linda's case.

131.   In filing his probable cause statements and writing his police report, and thereby initiating the above stated charges against Keith and Linda, Hammann had the luxury of unhurried judgment and repeated reflections.  In bringing those charges Hammann disregarded the risk of bringing charges for which there was no basis, and Hammann was aware of that risk.[4]

## DAMAGES

132.   While being held, attacked, and tased Keith suffered great pain.

133.   Keith suffered injuries to his face, chest, and back.

134.   When pushed Linda suffered injuries to her chest.

135.   After his release Keith went to the hospital and was treated.

136.   The day after the incident Linda went to the hospital and was treated.

137.   Each Plaintiff suffered garden variety emotional distress.

138.   The special damages, that is, the hospital bills for Keith and Linda are not known at the time of this filing.

## PUNITIVE DAMAGES

139.   Hammann's conduct was malicious or recklessly indifferent to Keith's constitutional

---

[4] *Winslow v. Smith*, 696 F.3d 716, 734 (8th Cir. 2012).

right to be free of unfair criminal charges, unreasonable seizure, excessive force and retaliation for exercise of first amendment rights.[5]

140.    The conduct of Hammann was malicious or recklessly indifferent to Linda's constitutional right to be free of unfair criminal charges and excessive force.[6]

141.    The offensive conduct of Hammann calls for deterrence and punishment over and above that provided by compensatory awards, and his conduct was motivated by evil motive or intent, and/or involved reckless or callous indifference to the federally protected constitutional rights of Plaintiffs.[7]

## CAUSATION

142.    The conduct of Hammann proximately caused Plaintiffs' damages.

## NO QUALIFIED IMMUNITY

143.    There was no probable cause to charge Keith with Nuisance in New Haven Municipal Court.

144.    There was neither probable cause nor arguable probable cause to arrest Keith for Peace Disturbance because Keith had committed no crime whatsoever and an officer in Hammann's position could not have had even a mistaken belief that Keith had committed a crime.[8]

145.    It is well established that a citizen has a First Amendment right to give another citizen the finger and say obscenities as long as the gesture or words are not accompanied by fighting words.[9]

---

[5] 8th Cir Model Jury Instruction 4.72.
[6] 8th Cir Model Jury Instruction 4.72.
[7] *Naucke v. City of Park Hills*, 284 F.3d 923, 929 (8th Cir. 2002).
[8] *Gerling v. City of Hermann, Missouri*, 2 F.4th 737, 742 (8th Cir. 2021).
[9] *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 141 S. Ct. 2038, 2046 (2021).

146.    It is clearly established that an arrest is unlawful unless there is probable cause or arguable probable cause for the arrest.[10]

147.    This is a case in which no force was allowed at all to be used by Hammann against Keith or Linda because there was no probable cause or arguable probable cause for the arrest of Keith, or the use of force against Keith or Linda.[11]

148.    Keith did not resist arrest and no reasonable officer in Hammann's position would have thought Keith was resisting arrest.[12]

149.    Keith did not assault Hammann and no reasonable officer in Hammann's position would have thought Keith assaulted him.

150.    Hammann is not entitled to qualified immunity.

### § 1988 ATTORNEY'S FEES AND COSTS

151.    In pursuit of their claims, Plaintiffs are incurring reasonable statutory attorney's fees, taxable costs, and non-taxable costs compensable under 42 U.S.C. § 1988.

### COUNT I
### SUBSTANTIVE DUE PROCESS
### NUISANCE CASE
### KEITH PILARSKI

152.    Plaintiff Keith Pilarski incorporates all prior paragraphs.

153.    *First*, Hammann initiated a charge of "Nuisance" against Keith Pilarski in City of New

---

[10] *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013).

[11] "It was unreasonable for McCrystal to use more than de minimis force against Small by running and tackling him from behind without warning. *See Shannon v. Koehler,* 616 F.3d 855, 863 (8th Cir.2010); *Bauer v. Norris,* 713 F.2d 408, 412–13 (8th Cir.1983) (establishing that no use of force was reasonable where the plaintiffs were charged with disorderly conduct, there was no evidence that any crime had been committed, and no evidence that the plaintiffs physically resisted or threatened the officer—even though the plaintiffs were "argumentative, vituperative, and threatened legal action")". *Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013).

[12] *Gerling v. City of Hermann, Missouri*, 2 F.4th 737, 744 (8th Cir. 2021).

Haven municipal court over a sign in the window of the Pilarski residence, and wrote up the charge in an unlawful manner, and

154.   *Second*, bringing the charge was reckless in that it violated Keith Pilarski's right to fair criminal proceedings because putting a sign in one's window is protected by the First Amendment, the City of New Haven Nuisance Ordinance has nothing to do with signs, and the form of the charge did not advise Keith of the charge against him, and

155.   *Third*, Hammann's state of mind was willful, knowing or with reckless disregard for the truth,[13] and

156.   *Fourth*, under these circumstances the initiation of the charge by Hammann against Keith Pilarski shocks the contemporary conscience, and

157.   *Fifth,* as a direct result, Keith Pilarski was damaged.[14] [15]

158.   The conduct of Hammann in this Count was malicious or recklessly indifferent to Plaintiff Keith Pilarski's right not to be subjected to unfair criminal proceedings, and therefore Plaintiff Keith Pilarski is entitled to punitive damages.[16]

WHEREFORE, Plaintiff Keith Pilarski prays for compensatory damages and punitive damages for substantive due process violation against Defendant Chief Christopher Hammann, in his individual capacity, in a fair and reasonable amount, for reasonable attorney's fees, for costs, and for such other relief as the court finds to be just, meet and reasonable.

**COUNT II**
**SUBSTANTIVE DUE PROCESS**
**STATE CHARGES**
**KEITH PILARSKI**

---

[13] *Mervilus v. Union Cnty.*, 73 F.4th 185, 194 (3d Cir. 2023)
[14] *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012).
[15] 8th Cir. Mod. Jur. Instr. 4.40.
[16] 8th Cir. Mod. Jur. Instrucs. 5.72.

159.    Plaintiff Keith Pilarski incorporates all prior paragraphs.

160.    *First*, Hammann initiated state charges of Peace Disturbance, Assault on a Police Officer, and Resisting Arrest against Keith Pilarski,

161.    *Second*, bringing the charges was reckless in that the charges violated Keith Pilarski's right to fair criminal proceedings because there was no basis to any of the charges and Hammann fabricated the evidence upon which the charges were based,[17]

162.    *Third*, at trial Hammann fabricated his testimony, and

163.    *Fourth*, Hammann's state of mind was willful, knowing or with reckless disregard for the truth, and

164.    *Fifth*, under these circumstances Hammann's initiation of the charges and Hammann's trial testimony against Keith Pilarski shocks the contemporary conscience,

165.    *Sixth,* as a direct result, Keith Pilarski was damaged.[18] [19]

166.    The conduct of Hammann in this Count was malicious or recklessly indifferent to Plaintiff Keith Pilarski's right not to be subjected to unfair criminal proceedings, and therefore Plaintiff Keith Pilarski is entitled to punitive damages.[20]

WHEREFORE, Plaintiff Keith Pilarski prays for compensatory damages and punitive damages for substantive due process violation against Defendant Chief Christopher Hammann, in his individual capacity, in a fair and reasonable amount, for reasonable attorney's fees, for costs, and for such other relief as the court finds to be just, meet and reasonable.

**COUNT III**
**SUBSTANTIVE DUE PROCESS**
**STATE CHARGES**

---

[17] *Mervilus v. Union Cnty.*, 73 F.4th 185, 194 (3d Cir. 2023)
[18] *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012).
[19] 8th Cir. Mod. Jur. Instr. 4.40.
[20] 8th Cir. Mod. Jur. Instrucs. 5.72.

16

## LINDA PILARSKI

167.   Plaintiff Linda Pilarski incorporates all prior paragraphs.

168.   *First*, Hammann initiated state charges of Resisting/Interfering with Arrest against Linda Pilarski, and

169.   *Second*, bringing the charge was reckless in that it violated Linda Pilarski's right to fair criminal proceedings because there was no basis to the charge, and

170.   *Third*, Hammann's state of mind was willful, knowing or with reckless disregard for the truth,[21] and

171.   *Fourth*, under these circumstances the initiation of the charge by Hammann against Linda Pilarski shocks the contemporary conscience, and

172.   *Fifth,* as a direct result, Linda Pilarski was damaged.[22] [23]

173.   The conduct of Hammann in this Count was malicious or recklessly indifferent to Plaintiff Linda Pilarski's right not to be subjected to unfair criminal proceedings, and therefore Plaintiff Linda Pilarski is entitled to punitive damages.[24]

WHEREFORE, Plaintiff Linda Pilarski prays for compensatory damages and punitive damages for substantive due process violation against Defendant Chief Christopher Hammann, in his individual capacity, in a fair and reasonable amount, for reasonable attorney's fees, for costs, and for such other relief as the court finds to be just, meet and reasonable.

## COUNT IV
## UNREASONABLE SEIZURE
## KEITH PILARSKI

---

[21] *Mervilus v. Union Cnty.*, 73 F.4th 185, 194 (3d Cir. 2023)
[22] *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012).
[23] 8th Cir. Mod. Jur. Instr. 4.40.
[24] 8th Cir. Mod. Jur. Instrucs. 5.72.

174.   Plaintiff Keith Pilarski incorporates all prior paragraphs.

175.   *First*, Hammann arrested Keith Pilarski, and

176.   *Second*, Hammann's arrest of Keith Pilarski was not reasonable because at that time no reasonable officer would have had even a mistaken belief that Keith Pilarski had committed a crime, and

177.   *Third*, as a direct result, Plaintiff Keith Pilarski was damaged.[25]

178.   The conduct of Hammann in this Count was malicious or recklessly indifferent to Plaintiff Keith Pilarski's right not to be arrested without arguable probable cause, and therefore Plaintiff Keith Pilarski is entitled to punitive damages.[26]

WHEREFORE, Plaintiff Keith Pilarski prays for compensatory damages and punitive damages for unreasonable seizure against Defendant Chief Christopher Hammann, in his individual capacity, in a fair and reasonable amount, for reasonable attorney's fees, for costs, and for such other relief as the court finds to be just, meet and reasonable.

## COUNT V
## EXCESSIVE FORCE
## KEITH PILARSKI

179.   Plaintiff Keith Pilarski incorporates all prior paragraphs.

180.   *First*, Hammann put Keith Pilarski in a headlock, ordered his subordinate to tase him, manhandled him, and put his weight on him, and

181.   *Second*, the force used was excessive because it was not reasonably necessary under the circumstances, and

---

[25] 8th Cir. Mod. Jur. Instr. 4.40.
[26] 8th Cir. Mod. Jur. Instrucs. 5.72.

182.    *Third*, as a direct result, Plaintiff Keith Pilarski was damaged. [27]

183.    The conduct of Hammann in this Count was malicious or recklessly indifferent to Plaintiff Keith Pilarski's right to be free of excessive force, and therefore Plaintiff Keith Pilarski is entitled to punitive damages.[28] [29]

WHEREFORE, Plaintiff Keith Pilarski prays for compensatory damages and punitive damages for excessive force against Defendant Chief Christopher Hammann, in his individual capacity, in a fair and reasonable amount, for reasonable attorney's fees, for costs, and for such other relief as the court finds to be just, meet and reasonable.

### COUNT VI
### EXCESSIVE FORCE
### LINDA PILARSKI

---

[27] 8th Cir. Mod. Jur. Instr. 4.40.  see *Rohrbough v. Hall*, 586 F.3d 582, 587 (8th Cir. 2009), "A reasonable officer, when faced with the present circumstances, would have known that responding by punching Mr. Rohrbough in the face, taking him to the ground face down, landing on top of him and thereby causing him serious injury was illegal.  The district court therefore properly denied summary judgment based on qualified immunity."  See also, *Hemphill v. Hale*, 677 F.3d 799 (8th Cir. 2012); *Smith v. Appledorn*, 2013 WL 451320 at *3-4 (Feb. 6, 2013)

[28] 8th Cir. Mod. Jur. Instrucs. 5.72.

[29] Where a plaintiff does not physically resist arrest or physically threaten the officer or others, any force may be excessive. *Frazell v. Flanigan*, 102 F.3d 877, 884 (7th Cir. 1996) (two blows to subject who "had effectively been subdued" (i.e., could not escape and that he posed no danger to officers) capable of being found "completely gratuitous and therefore objectively unreasonable under the circumstances" by a jury); *Id.* at 885 ("[I]t is one thing to use force in subduing a potentially dangerous or violent suspect, and quite another to proceed to gratuitously beat him."); *Gaddis v. Redford Twp.*, 364 F.3d 763, 772 (6th Cir. 2004) ("We acknowledge that even minor uses of force are unconstitutionally excessive if they are 'totally gratuitous.' *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988)"); *Alexis v. McDonald's Restaurants*, 67 F.3d 341, 346 (1st Cir. 1995) (summary judgment for officer improper where, officer abruptly pulled woman from restaurant booth (across table, with sufficient force to bruise her legs), handcuffed her, and dragged her to police cruiser to effect misdemeanor trespassing arrest)*;* *Rowland v. Perry*, 41 F.3d 167 (4th Cir. 1994) (denying qualified immunity–after analysis of seriousness of crime, threat to officer or public, and degree of resistance–on excessive force claim where police officer attacked person suspected of taking a $5 bill that did not belong to him from the floor even though that person may have resisted after he was attacked); *Ware v. Reed*, 709 F.2d 345 (5th Cir. 1983).

184.   Plaintiff Linda Pilarski incorporates all prior paragraphs.

185.   *First*, Hammann punched Linda which shoved her to the ground, and

186.   *Second*, the force used was excessive because it was not reasonably necessary under the circumstances, and

187.   *Third*, as a direct result, Plaintiff Linda Pilarski was damaged. [30]

188.   The conduct of Hammann in this Count was malicious or recklessly indifferent to Plaintiff Linda Pilarski's right to be free of excessive force, and therefore Plaintiff Linda Pilarski is entitled to punitive damages.[31]

WHEREFORE, Plaintiff Linda Pilarski prays for compensatory damages and punitive damages for excessive force against Defendant Chief Christopher Hammann, in his individual capacity, in a fair and reasonable amount, for reasonable attorney's fees, for costs, and for such other relief as the court finds to be just, meet and reasonable.

## COUNT VII
## RETALIATION FOR EXERCISE OF FIRST AMENDMENT RIGHTS
## KEITH PILARSKI

189.   Plaintiff Keith Pilarski incorporates all prior paragraphs.

190.   *First*, Plaintiff Keith Pilarski opposed the actions of the local government of New Haven by engaging in citizen activism, putting up signs, and/or making gestures or statements toward a person, and

191.   *Second*, Hammann charged Keith Pilarski with a false charge of nuisance, and/or put him in a headlock and/or had him tased, and/or put his weight on top of him, and/or manhandled him and/or arrested him, and/or charged him with crimes in state court.

---

[30] 8th Cir. Mod. Jur. Instr. 4.40.
[31] 8th Cir. Mod. Jur. Instrucs. 5.72.

192.   *Third*, the actions which occurred might well dissuade a reasonable person in the same or similar circumstances from engaging in citizen activism, putting up signs, and/or making gestures or statements toward a person, and

193.   *Fourth*, the actions in Paragraph Second were motivated at least in part by Keith Pilarski engaging in citizen activism, putting up signs, and/or making gestures or statements toward a person, and

194.   *Fifth*, as a direct result, Plaintiff Keith Pilarski was damaged.[32]

195.   The conduct of Hammann in this Count was malicious or recklessly indifferent to Plaintiff Keith Pilarski's right to be free of Retaliation for Exercise of First Amendment Rights, and therefore Plaintiff Keith Pilarski is entitled to punitive damages.[33]

WHEREFORE, Plaintiff Keith Pilarski prays for compensatory damages and punitive damages for Retaliation for Exercise of First Amendment Rights against Defendant Chief Christopher Hammann, in his individual capacity, in a fair and reasonable amount, for reasonable attorney's fees, for costs, and for such other relief as the court finds to be just, meet and reasonable.

Respectfully Submitted,

Co-Counsel for Plaintiffs

   /s/ W. Bevis Schock   .
W. Bevis Schock, 32551MO
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322

---

[32]  8th Cir. Mod. Jur. Instrucs. 4.45.
[33]  8th Cir. Mod. Jur. Instrucs. 5.72.

21

_  /s/ Robert H. Menees   .
Robert H. Menees, MBE # 62367
Menees & Menees
121 W. Adams Avenue
Kirkwood, MO  63122
rhmenees@gmail.com
Fax:    314-821-9798
Voice: 314-821-1111