UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KEITH PILARSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:23-CV-01188-NCC |
| | ) |
| CHIEF CHRISTOPHER HAMMANN, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on the parties' Motions in Limine and Responses (Docs. 52, 55, 58, 60), Defendant's Objections to Plaintiffs' Exhibit List (Doc. 65), Defendant's oral objections to Plaintiffs' "May Be Called" Witnesses, and the parties' Objections to Proposed Jury Instructions (Docs. 57, 59). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 5). The Court heard argument on the motions at the Final Pretrial Conference on June 5, 2025. The Court rules as follows.[1]

*Defendant's Motions in Limine*

**1. Keith's underlying criminal case and trial**

Plaintiffs consent. The Court will sustain the motion. The parties may still impeach witnesses with relevant testimony from Keith's criminal case, but they should not make any reference to the "criminal case/trial/prosecution." The parties have agreed to use the phrase "In your prior testimony."

---

[1] The Court will refer to Christopher Hammann as "Hammann" and Keith and Linda Pilarski as "Keith" and "Linda" for ease of reference. The Court will refer to "Plaintiffs" in the plural since Linda Pilarski was dismissed after the Final Pretrial Conference.

### 2. References to any FBI or federal investigation into Hammann

Plaintiffs consent.  The Court will sustain the motion.

### 3. Hammann's surrender of his POST Certification

Defendant argues such evidence: is not probative, is heavily outweighed by prejudice to Hammann, may create several irrelevant mini-trials, and is excluded by F.R.E. 404.  The Court agrees.  The Court will sustain the motion pursuant to F.R.E. 404.  Relatedly, the parties may identify that Defendant was Chief at the time of the incident but should in all other respects refer to him as "Mister."

### 4. Hammann's prior testimony that he did not originally plan to arrest Keith for a peace disturbance

Defendant argues that such evidence only goes to probable cause to arrest, which is no longer at issue.  Plaintiffs argue that it is relevant to the totality of circumstances surrounding Hammann's use of force.  The Court will sustain the motion because Plaintiffs' false arrest and retaliatory arrest claims were dismissed on summary judgment.  *See Habiger v. City of Fargo*, 80 F.3d 289, 298 n.8 (8th Cir. 1996) ("[W]e are inclined to believe that the presence of actual or arguable probable cause is irrelevant to the objective reasonableness of the force used to effect an arrest."); *c.f. Goff v. Bise*, 173 F.3d 1068, 1074–75 (8th Cir. 1999) (allowing motive evidence in "unusual circumstances" where arresting officer was having affair with arrestee's wife, and false arrest claim was still pending), *abrogated on other grounds by Ortiz v. Jordan*, 562 U.S. 180, 131 S. Ct. 884, 178 L. Ed. 2d 703 (2011); *see also Graham v. Connor*, 490 U.S. 386, 397 (1989) (stating that "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation" and

2

"[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.").

> Indeed, this Court must be vigilant in excluding evidence of dismissed claims:
>
> The decision in [*Blair v. Wills,* 420 F.3d 823 (8th Cir. 2005)] suggests that a trial court must be vigilant to exclude evidence that relates to dismissed *claims* or misconduct of a party that is irrelevant or only marginally relevant to remaining claims, because of the prejudicial effect of such evidence. *See also Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist.,* 103 F.3d 1422, 1432–33 (8th Cir. 1997) (holding that evidence that was relevant only to a voluntarily withdrawn breach-of-contract claim should not have been admitted to determine damages owed under a termination clause, and noting that the error in admitting such evidence "caused, or contributed to, a prejudicial conclusion" by the jury); *Dethmers Mfg. Co., Inc. v. Automatic Equip. Mfg. Co.,* 73 F.Supp.2d 997, 10002–03 (N.D. Iowa 1999) (concluding that evidence that was only marginally relevant to remaining claims should be excluded pursuant to Rule 403, on the ground that it could confuse the issues for the jury).

*Peters v. Risdal*, No. C 12-4070-MWB, 2013 WL 9839011, at *5 (N.D. Iowa Dec. 5, 2013) (emphasis in original).

At the Final Pretrial Conference, Plaintiffs stated they wished to make an offer of proof at trial, outside of the presence of the jury, regarding this motion in limine. Defendant objected on the same grounds. For the reason set forth above, the Court will sustain Defendant's objection to Plaintiffs' proposed offer of proof regarding this motion in limine.

**5. References to Hammann sending photographs of his penis to women**

In the body camera video, Linda makes comments about Hammann sending photographs of his penis to women. She has also testified that she made similar comments earlier in the encounter. Defendant argues that such evidence is irrelevant and excludable under F.R.E. 404, and that whether Hammann's force was subjectively motivated by Linda's alleged comments is irrelevant to the objective reasonableness inquiry. Plaintiffs argue Linda's comments go to the

3

totality of the circumstances of Hammann's decision to push and/or punch her.  Following the Final Pretrial Conference, Plaintiffs dismissed Linda's excessive force claim against Hammann.

The Court will overrule the motion in part.  Linda's comments are relevant to the totality of the circumstances confronting Hammann when he used force against Keith.  *See Stepanovich v. City of Naples*, 728 F. App'x 891, 900 (11th Cir. 2018) (approving admission of contemporaneous berating and offensive comments by friend of arrestee for full context of events and proper understanding of officer's demeanor).  At the Final Pretrial Conference, defense counsel stated that, if her comments are allowed in, he would like to examine Hammann on the truth of the matter.  The Court will allow that.  In addition, there was discussion at the conference of a specific comment by Linda in the body camera video that Hammann is "sending it to little girls."  The Court and the parties are amenable to excluding that specific comment if it is possible to simply bleep it out (as opposed to manually turning down the volume).  If not, the Court will allow the full video in.

**6. Improper questioning of Hammann on matters which are inherently legal conclusions and/or argumentative**

At the Final Pretrial Conference, Defendant clarified that this motion was meant to address prior questioning of Hammann at Keith's criminal trial about his familiarity with various constitutional amendments.  The Court will sustain the motion.  However, Hammann may testify to his professional training and experience as relevant.

In discussion of this motion in limine at the Final Pretrial Conference, there was discussion of Plaintiffs' "May Be Called" Witnesses: Greg Brinker, Chris Hammann, Evelyn LaBoebe, Joshua Lewis, Ex-Mayor George Panhorst, Jr., Tara Steffens, Kathleen "Kathy" Trentmann, and Mark Wehner.  Plaintiffs stated they will not be calling Hammann, Lewis,

4

Panhorst, Steffens, and Trentmann. Thus, the witnesses at issue were Brinker, LaBoebe, and Wehner. Defendant argued that they have no relevant testimony to give.

Defendant argued that Brinker's testimony is only relevant to the arrest claims dismissed on summary judgment and would get into the weeds of the already-litigated probable cause issue. Plaintiffs agreed not to call Brinker or make an offer proof but reserved the right to call him as a rebuttal witness depending on Hammann's testimony. The Court will reserve ruling on whether Brinker may be called as a rebuttal witness.

Plaintiffs proffered that LaBoebe worked at an antique shop downtown and that then-Alderman Wehner told her to call the police if she heard the Pilarskis cuss so they could arrest Keith. Plaintiffs further proffered that Wehner talked to a policeman (Wehner could not remember who) about complaints about the Pilarskis. Plaintiffs argued that the testimony of LaBoebe and Wehner is relevant to how Hammann was part of the town's "power structure" that had it out for the Pilarskis based on their First Amendment-protected expression and that their testimony goes to Hammann's "ill will" toward the Pilarskis. Defendant again argued that their testimony is only relevant to dismissed claims. The Court will sustain Defendant's objections to LaBoebe and Wehner. Their testimony is related to the claims dismissed on summary judgment and is not relevant to the remaining excessive force claim. *See Blair*, 420 F.3d 823; *Peters*, 2013 WL 9839011 at *5. Moreover, any connection with Hammann is too attenuated and speculative to constitute "ill-will" evidence under *Graham*. *See Graham v. Connor*, 490 U.S. 386, 399 n.12 (1989) ("[I]n assessing the credibility of an officer's account of the circumstances that prompted the use of force, a factfinder may consider, along with other factors, evidence that the officer may have harbored ill-will toward the citizen."); *c.f. Goff*, 173 F.3d at 1074–75 (allowing evidence that arresting officer was having affair with arrestee's wife); *Agushi v. Duerr*, 196 F.3d

5

754, 761–62 (7th Cir. 1999) (suggesting witness testimony that officer said "I'm going to ruin those people" was admissible); *Heitzman v. Engelstad*, No. 12-CV-2274 MJD/LIB, 2013 WL 4519403, at *6–8 (D. Minn. July 11, 2013) (suggesting family dispute evidence would be admissible where officer's wife was formerly married to plaintiff's brother), *aff'd*, No. CIV. 12-2274 MJD/LIB, 2013 WL 4516320 (D. Minn. Aug. 26, 2013); *Johnson v. Marshall*, No. 15-CV-02608, 2018 WL 11222673, at *3–4 (N.D. Ill. July 9, 2018) (tentatively allowing evidence of certain racially-charged internet domain names owned by officer).

Plaintiffs asked to make an offer of proof at trial, outside of the presence of the jury, in the form of two to three sentences each regarding what the testimony of LaBoebe and Wehner would have been. Defendant was amenable. The Court will allow Plaintiffs' counsel to proffer two to three sentences each regarding the testimony of LaBoebe and Wehner.

Relatedly, the Court will sustain Defendant's objections to Plaintiffs' Exhibits J, K, and L (Museum Photo, Pilarski House with Signs, and Museum Sign) because those exhibits are related to the claims dismissed on summary judgment and are not relevant to the remaining excessive force claim. *See Blair*, 420 F.3d 823; *Peters*, 2013 WL 9839011 at *5.

**7. Linda's claim about Hammann's marijuana use**

In the body camera video, Linda makes comments like "Go smoke your weed, cop. We know where you get it." She has also testified that she made similar comments earlier in the encounter. As with Defendant's motion #5, the Court will overrule the motion in part. Linda's comments are relevant to the totality of the circumstances confronting Hammann when he used force against Keith. *See Stepanovich*, 728 F. App'x at 900. However, Plaintiffs may not go into the truth of the matter asserted. Plaintiffs' counsel represented that he would ask Linda what she

6

said but would not ask Hammann if it was true.  The Court offered the possibility of a limiting instruction.  Defense counsel stated he would like to consider it.

**8.  Jeramey Lehnig incident, lawsuit, and/or settlement**

Plaintiffs consent.  The Court will sustain the motion.

**9.  Argument or evidence that Linda was not arrested on 9/12/22 or that she was charged (and case was entered nolle prosequi)**

Defendant argues such evidence is irrelevant.  Plaintiffs argue that whether Linda was arrested is probative of whether, as Defendant alleges, she jumped on Hammann and tried to grab his gun, because it is unimaginable she would not be arrested if she did.  The Court will overrule the motion in part.  Plaintiffs may adduce evidence that Linda was not arrested on September 12, 2022.  *See* F.R.E. 401.

**10.  Detailed evidence concerning April 2022 Nuisance Ticket**

Defendant allows that a brief mentioning of the matter is appropriate as part of explaining the limited interactions between Keith and Hammann before September 12, 2022. Defendant argues that extensive detail would be for an improper purpose: invoking juror thoughts/feelings on dismissed matters such as free speech rights, invoking juror sympathy for the Pilarskis, or showing Hammann's incompetence (Hammann wrote a ticket for a "nuisance" when it should have been under the City's sign ordinance).  Defendant argues such detail is irrelevant and an undue waste of time.  Plaintiffs argue the ticket shows Hammann was against Keith and used an unlawful charge to bring him into court, which is relevant to the totality of the circumstances.

The Court will sustain the motion in part.  A brief overview of the April 2022 Nuisance Ticket is appropriate to explain the nature of prior contacts between Keith and Hammann.  *See Barnes v. Felix*, 145 S. Ct. 1353, 1358-59 (2025) (reasoning history of interactions between

suspect and officer are relevant to the totality of the circumstances). Plaintiffs are permitted to go into the details of Keith and Hammann's interaction that day. The Court will also permit Plaintiffs to establish that Hammann wrote a ticket for a "nuisance" when it should have been under the City's sign ordinance. At the Final Pretrial Conference, Plaintiffs' counsel agreed to work on a stipulation with defense counsel to that effect. Additionally, Plaintiffs are seeking to admit testimony that Keith pled guilty to the nuisance charge and was on probation for it at the time of the incident. Such testimony will be allowed. However, Plaintiffs will not be permitted to go into other extraneous matters related to the nuisance court case.

Relatedly, the Court will sustain Defendant's objections to Plaintiffs' Exhibits M, P, Q, R, S, and T (Nuisance Ticket, Docket Sheet from Nuisance Charge, Nolle – Nuisance Charge, Nuisance Ordinance, Nuisance charge code, and sign ordinance). The Court will overrule Defendant's objection to Plaintiffs' Exhibit XX (Handwritten Nuisance Ticket).

**11. Detailed evidence concerning the Greg Brinker encounter or its conveyance to Hammann on 9/12/22.**

Defendant allows that the jury should be able to understand the general nature of the reason for Hammann first talking to Keith Pilarski on September 12, 2022, and that a brief explanation of the nature of the underlying exchange on September 12, 2022 is appropriate. Defendant argues that detailed evidence as to the specific occurrence and the exact mode of Hammann receiving information concerning the Brinker encounter is irrelevant and could create juror confusion. Plaintiffs argue that Keith Pilarski's disputes with Brinker over the months before the incident are relevant to the totality of the circumstances. Plaintiffs also wish to resurrect their false arrest claim by making an offer of proof that Hammann had no information about the distance between Keith Pilarski and Brinker.

8

The Court will sustain the motion in part.  Detail about prior encounters between Keith Pilarski and Brinker is irrelevant, as Plaintiffs argued on summary judgment that Hammann had no knowledge of those prior encounters.  *See* F.R.E. 401.  Detail about the distance between Keith Pilarski and Brinker and the face-to-face element of a peace disturbance relates to issues resolved on summary judgment and will be excluded.  *See Blair*, 420 F.3d 823; *Peters*, 2013 WL 9839011 at *5.  Plaintiffs may not make an offer of proof on that point.  Relatedly, the Court will sustain Defendant's objections to Plaintiffs' Exhibits U and V (Peace disturbance ordinance and Peace disturbance statute).  The Court is inclined to rule that detail about the ambiguity as to how Brinker's account was conveyed to Hammann, and by whom, would confuse the issues, mislead the jury, and waste time.  *See* F.R.E. 403; Doc. 38 at 8 n.3 (describing ambiguity).  However, the Court will reserve ruling on Plaintiffs' proposed cross-examination of Hammann about how he learned of Brinker's account.

**12. Edward ("Steve") Watsek testimony**

At the Final Pretrial Conference, Plaintiffs' counsel stated that he will not call Watsek.  This motion is moot.

**13. Medical expenses or damages not disclosed or properly supported**

Plaintiffs consent and state that they only plan to describe their medical care in the most general terms and will not elicit testimony regarding heart monitoring.  The Court will sustain the motion.

*Plaintiffs' Motions in Limine*

**1. Undisclosed witnesses and/or evidence.**

Defendant agrees.  The Court will sustain the motion.

**2. Any dismissed causes of action.**

9

Defendant agrees.  The Court will sustain the motion.

**3.  All pre-incident and post-incident law enforcement contact involving Plaintiffs, particularly detentions not ending in arrest, arrests, and charges not resulting in convictions, excluding the nuisance charge against Keith.**

Defendant agrees as to post-incident law enforcement contact.  The Court will sustain the motion as to post-incident law enforcement contact (specifically including the criminal charges against the Pilarskis, Keith's 24-hour hold/detention immediately after the September 12, 2022 incident, and Keith's criminal trial/acquittal).  At the Final Pretrial Conference, Plaintiffs clarified that this motion was meant to address pre-incident contact *not* with Hammann, such as Keith's arrest at age 18 for shoplifting.  The Court will sustain the motion as to that pre-incident contact.  The Court notes that pre-incident contact with Hammann is admissible as set forth in the Court's order on Defendant's motion #10.

**4.  Mitigation of damages**

Defendant agrees.  The Court will sustain the motion.

**5.  Comparative fault**

Defendant agrees.  The Court will sustain the motion.  Defendant may still argue and offer evidence that Plaintiffs' conduct caused Defendant's responses.

**6.  Prior convictions more than 10 years old**

Defendant agrees.  The Court will sustain the motion.

**7.  Other civil actions involving Plaintiffs**

Defendant agrees.  The Court will sustain the motion.

**8.  Opinion testimony on ultimate issues from Defendant himself and Defendant's non-expert witnesses**

10

Defendant agrees.  The Court will sustain the motion.  Hammann and Walters may still explain their training, experience, and methods employed on September 12, 2022.  They may not offer opinions as to "reasonableness" or "constitutionality."  At the Final Pretrial Conference, the parties agreed that they would have a discussion prior to getting "near the line."

### 9. Facts known in hindsight

Defendant agrees.  The Court will sustain the motion.

### 10. Implying a verdict will damage Defendant's personal finances or family.

The Court will reserve ruling, as mention of damage to Defendant's personal finances or family may be admissible on the issue of punitive damages.  *See Delgado v. Mak*, No. 06C3757, 2008 WL 4367458, at *3–5 (N.D. Ill. Mar. 31, 2008) (evidence of defendant's net worth and that he is personally responsible for any award relevant to punitive damages); *Ball-Bey v. Chandler*, No. 4:18-CV-1364-SPM, 2025 WL 274870, at *5 (E.D. Mo. Jan. 23, 2025) (reserving ruling on evidence that "may be relevant to the question of punitive damages but would be highly prejudicial if considered by the jury in determining liability").  The Court notes that counsel may argue that this case is "important to" and "matters to" their clients.

### 11. "Winning lottery" and "getting rich"

Defendant agrees as to witnesses but maintains the right to comment on the amount of money sought in closing argument.  As with Plaintiffs' motion #10 above, the Court will reserve ruling.  Relatedly, in their Trial Brief, Plaintiffs state that they wish to present a "send a message" argument in closing.  The Court will reserve ruling on that proposed argument as well.

### 12. Mention of Defendant's Commendations and Awards

Defendant agrees.  The Court will sustain the motion.

### 13. Officers appearing in court in uniform and/or with weapons.

Defendant agrees as to Hammann and agrees that Walters will not appear with a weapon. The Court will sustain the motion in part.  Walters may appear in uniform.  *See Jones v. Ralls*, 187 F.3d 848, 851 (8th Cir. 1999) (denying point on appeal asserting error in permitting officers to wear standard police uniforms at trial); *Zaken v. Kelley*, 370 F. App'x 982, 985–86 (11th Cir. 2010) (affirming decision allowing officer to wear uniform at trial on individual capacity § 1983 claim).  However, at the Final Pretrial Conference, Defendant represented that Walters does not plan to wear his uniform.

### 14. Apology

Defendant agrees.  The Court will sustain the motion.

### 15. Tracy Gutierrez, testimony that Keith Pilarski made racist statements

Defendant agrees.  The Court will sustain the motion.

### 16. Testimony regarding LGBT signage on Brightly Howell's car, Pilarski comments

Defendant agrees.  The Court will sustain the motion.

### 17. Complaints of persons about Keith Pilarski's pre-incident behavior

The parties appear to agree that such complaints are admissible to the extent that Hammann had knowledge of them, and they bore on his handling of the encounter with Keith Pilarski.  The Court will overrule the motion in that respect.  The motion is otherwise sustained.

### 18. Any injuries suffered during the incident by Defendant Hammann

Defendant agrees.  The Court will sustain the motion.  Relatedly, the Court will sustain Defendant's objection to Plaintiffs' Exhibit I (Deer Photo).

*Defendant's Remaining Objections to Plaintiffs' Exhibit List*

The Court will sustain Defendant's objections to Plaintiffs' Exhibits Y and Z (Transcript of Body Cam Video and Marked Transcript of Body Cam Video).  At the Final Pretrial Conference, the Court sustained Defendant's objection to Exhibit II (New Haven PD taser policy).  However, the Court will now overrule Defendant's objections to Plaintiffs' Exhibits II and HH (New Haven PD taser policy and New Haven PD dash cam policy).  *See* Case No. 4:19-cv-02583-AGF, Doc. 130 (allowing SLPD Special Order regarding use of force in excessive force case).  Both the taser and dash cam policies will be allowed.

*Objections to Jury Instructions*

The Court will sustain Defendant's objections to the inclusion of dismissed claims in Plaintiffs' proposed jury instructions.  The Court will reserve ruling as to Defendant's objections to the phrase "put his weight on him" in Plaintiffs' proposed verdict director for the excessive force claim against Keith Pilarski.  The Court will also reserve ruling on Defendant's proposal to include the following provision in that director: "You must determine whether the officer's actions were reasonable in the light of the facts and circumstances confronting the officer without regard to the officer's own state of mind, intention or motivation."  (Defendant's proposal to include the same provision in the verdict director for Linda Pilarski is now moot.)  And the Court will reserve ruling on Plaintiffs' objections to Defendant's proposed special interrogatories.  The Court is inclined to give an alternative set of proposed special interrogatories and will consider giving a broken-up version of Defendant's Question 8 (asking about "gratuitous and unnecessary violence" versus force "for a legitimate law enforcement reason") as proposed by Plaintiffs.  Finally, the Court notes that at the Final Pretrial Conference, Defendant stated that the parties agreed on the preliminary instructions submitted by Plaintiffs.

13

*Additional Matters*

At the Final Pretrial Conference, the Court inquired about physical demonstrations by witnesses.  The parties stated that both Keith Pilarski and Hammann would be making physical demonstrations as they did in Keith Pilarski's criminal trial.  The parties agreed that any witness making a physical demonstration will step out of the witness box and in front of the monitor that is close to the jury box.  The parties agreed that the attorneys will describe what the witness is doing for audio recording purposes.  The Court stated that was fine, subject to any objections.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motions in Limine (Doc. 52) are **RESERVED, SUSTAINED, and OVERRULED**, as set forth in this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendant's Motions in Limine for Trial (Doc. 55) are **RESERVED, SUSTAINED, and OVERRULED**, as set forth in this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendant's Objections to Plaintiffs' Exhibit List (Doc. 65) are **SUSTAINED and OVERRULED**, as set forth in this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendant's oral objections to Plaintiffs' "May Be Called Witnesses" are **SUSTAINED**, as set forth in this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendant's Objections to Plaintiffs' Offered Jury Instructions (Doc. 57) are **RESERVED and SUSTAINED**, as set forth in this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiffs' [Objections] to Defendant's Proposed Jury Instructions (Doc. 59) are **RESERVED**, as set forth in this Memorandum and Order.

**IT IS FINALLY ORDERED** that Plaintiffs' Motion for Leave to File This Supplement to Their Trial Brief with Supplemental Authority Regarding Qualified Immunity and Jury Instructions (Doc. 68) is **GRANTED**.

Dated this 7th day of June, 2025.

                                             /s/ Noelle C. Collins
                                             NOELLE C. COLLINS
                                             UNITED STATES MAGISTRATE JUDGE